**SO ORDERED.**

**SIGNED this 02 day of October, 2006.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BRANDI D. ANDERSON, | ) | Case No. 04-14105 |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 04-5341 |
| | ) | |
| INTRUST BANK, N.A., | ) | |
| BRANDI D. ANDERSON and | ) | |
| JOHN C. ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

1

In this adversary proceeding, the trustee invokes his 11 U.S.C. §544(a)[1] hypothetical lien creditor powers to avoid and preserve an alleged unperfected security interest in favor of Intrust Bank, N.A. ("Intrust") that encumbers debtor's interest in a 1999 Chevrolet Tahoe and 1994 Ford Ranger pickup ("the vehicles").[2] The trustee also seeks a determination of the parties' respective rights in the vehicles and, by virtue of an order entered on May 1, 2005 the action has been resolved as to defendants Brandi D. Anderson and John C. Anderson.[3]

The trustee and Intrust Bank submitted this matter to the Court on stipulated facts[4] and briefs.[5] After careful review of the stipulations and authorities, the Court is now ready to rule and makes its findings of facts and conclusions of law in accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052.

A. <u>Jurisdiction</u>

This is a core proceeding to avoid a lien over which the Court has subject matter jurisdiction.[6]

B. <u>Findings of Fact</u>

On October 23, 2003, the debtor and her non-debtor husband, John C. Anderson, entered into

---

[1] This case predates the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). References to Title 11 of the United States Code refer to the Bankruptcy Code as it existed prior to BAPCPA.

[2] Debtor Brandi Anderson has an undivided one-half interest in the vehicles.

[3] Dkt. 16.

[4] Dkt. 22.

[5] Dkts. 29, 30 and 31.

[6] 28 U.S.C. § 157(b)(2)(K); 28 U.S.C. § 1334(b).

2

a Note, Disclosure and Security Agreement ("Agreement") with Intrust to refinance their existing loans with First National Bank of El Dorado ("First National") on the vehicles. Under the Agreement, the Andersons granted Intrust a security interest in the vehicles. At the time of the refinancing, First National held perfected security interests in the vehicles.

Once the loan was closed, Intrust mailed applications for secured title, showing Intrust's liens, to the Kansas Department of Revenue ("KDR"). KDR received these applications on November 17, 2003 with the appropriate fees. On November 20, 2003, KDR issued two titles to the vehicles, neither of which included a notation of Intrust's liens.

The debtor filed her bankruptcy petition on July 23, 2004. As of the date of bankruptcy, Intrust's liens were not noted on the electronic titles.[7] On September 20, 2004, KDR corrected its records to reflect Intrust's liens.

    C.    Conclusions of Law

Determining whether Intrust's security interests in the vehicles were adequately perfected requires review of the governing Uniform Commercial Code[8] sections as well as the Kansas vehicle title statute, KAN. STAT. ANN. § 8-135 (2003 Supp.). Of particular interest here is the extent of the activity required under KAN. STAT. ANN. § 84-9-311(a)(2) and (b) (2003 Supp.) in order to perfect these interests. Section 84-9-311(a)(2) provides that the filing of a financing statement is not necessary to perfect a lien subject to a certificate of title statute "which provides for a security

---

[7] For certificates of title issued on encumbered vehicles on and after January 1, 2003, the Division of Vehicles creates an electronic certificate of title. *See* KAN. STAT. ANN. § 8-135d (2005 Supp.).

[8] *See* Kansas Uniform Commercial Code, KAN. STAT. ANN. § 84-9-101 *et seq.* (2003 Supp.), as revised and effective July 1, 2001.

3

interest to be indicated on the certificate as a condition or result of perfection." Section 84-9-311(b) states that "a security interest in [certificate of title property] may be perfected only by compliance with those requirements [of the certificate of title law]."

KAN. STAT. ANN.§ 8-135(c)(6) (2003 Supp.) states that when a lender acquires a non-purchase-money security interest in a vehicle, the lender "shall require the holder [owner] of the certificate of title to surrender the same and sign an application for a mortgage title . . ."[9] When the title is surrendered, the lender "shall immediately deliver the certificate of title, application, and a fee of $10 to the division [of motor vehicles]" at which time the Division "shall issue a new certificate of title showing the liens or encumbrances so created, but not more than two liens or encumbrances may be shown upon a title."[10]

KAN. STAT. ANN.§ 8-135d(a) (2003 Supp.) states that on or after January 1, 2003, when an assignment of a title, manufacturer's statement of origin, or notice of security interest ("NOSI") indicates that the vehicle is burdened with a lien, the Division will create an electronic certificate of title and retain that title in electronic form. Subsection (b) of § 8-135d authorizes the Secretary of Revenue to promulgate regulation carrying out the electronic title section. The Secretary has issued KAN. ADMIN. REG. § 92-51-24(b)(2004) which authorizes the Division to print and mail a paper title to the owner of an electronically titled vehicle only when the liens encumbering the vehicle have been satisfied. This regulation was enacted in January of 2004 and applies to this case, but it is not clear in the record that KDR issued and mailed paper titles to the debtor.

Because Intrust's liens were not noted on the electronic certificates of title on the date

---

[9] KAN. STAT. ANN. § 8-135(c)(6) (2003 Supp.).

[10] *Id.*

4

debtor's case was filed, the trustee contends Intrust's security interests in the vehicles were unperfected and therefore can be avoided and preserved for the benefit of the estate citing KAN. STAT. ANN. § 84-9-311(b), § 8-135(c)(6), and the holding in *Mid American Credit Union v. Board of County Commissioners of Sedgwick County*.[11] Intrust responds that Kansas law resolves perfection issues not only by examining whether the lienholder has its lien listed on the title, but also by reviewing the process undertaken by the lienholder to get its lien noted on the certificate of title. Intrust contends that it "did everything that it was required to do to perfect its lien, and was in fact perfected as of the time it sent in the required documentation and filing fee" and "remained perfected for the interim period until the lien was noted on the electronic certificate of title."[12]

As the trustee points out, under former § 84-9-302(3)(c), there was a plausible argument to be made that compliance with the filing requirements of KAN. STAT. ANN. § 8-135(c)(6) would amount to perfection even if KDR omitted notation of the lender's lien on the title certificate. That statute provided that such a security interest "can be perfected only be presentation . . . of the documents appropriate under [the title statute] . . . and tender of the required fee . . . ."[13] The statute went on to establish that "such presentation and tender . . . shall have the same effect under this article as filing under this article, and such perfection shall have the same effect under this article as perfection by filing under this article." Thus, under the former law, one could argue as Intrust does that mere presentation of the documents and payment of the fee sufficed to perfect a vehicle lien. With the enactment of revised Article 9, and particularly the revisions contained in § 84-9-311,

---

[11] 15 Kan. App.2d 216, 806 P.2d 479, *rev. denied* 248 Kan. 996 (1991).

[12] Dkt. 30 at 7.

[13] *See* KAN. STAT. ANN. § 84-9-302(3)(c) (1996).

5

this argument is untenable. As noted above, § 84-9-311(b) plainly requires "compliance" with the vehicle titling statute, not "presentation and tender" as provided in former § 84-9-302.

As it relates to this case, KAN. STAT. ANN. § 8-135(c)(6) provides that when a person acquires a security agreement on a vehicle after issuance of the first certificate of title on the vehicle (in plain language, a refinance), the acquirer "shall" require the previous certificate of title holder to surrender the certificate. Then the new secured party is to submit the certificate of title, along with an application for secured title and a fee, to KDR. When KDR receives this submission, it "shall issue a new certificate of title showing the liens or encumbrances so created. . . ." As KAN. STAT. ANN. § 8-135d requires, when a title reflects a lien, KDR is to retain the title electronically. All of this presumably promotes the trustworthiness of vehicle titles in commerce and furthers the purpose of providing notice of a creditor's claim against the vehicle, thereby avoiding the attachment and enforcement of secret liens. This serves the bedrock policy of our secured transactions law.

*Mid American Credit Union*, while decided under former Article 9, still remains a source of valuable guidance on the construction of this statute. In that case, Mid American sued the Sedgwick County Board of County Commissioners, the Sedgwick County Treasurer, and KDR for negligence in failing to note its name as lienholder on a vehicle title. Mid American loaned its customer (Christopher Woods) the money to buy a 1980 Corvette and received a purchase money security interest. Because this was a purchase-money transaction governed by KAN. STAT. ANN. § 8-135(c)(5), Mid American then forwarded a notice of security interest (NOSI) to KDR. After 30 days passed without Woods applying for a title, Mid American repossessed the vehicle and obtained a repossession title. Thereafter, Mid American negotiated a second sale to Woods, assigning the title to him, with Mid American noted on the reverse as a lienholder. Woods in turn applied for a title

6

at the courthouse. When the application was processed by the treasurer's office, the clerk failed to note Mid America's lien and a "clear" title was issued. When Woods defaulted and disappeared, Mid American sought to recover the vehicle, only to find that its lien had never been listed on the new certificate of title.

In determining that Mid American's interests had been damaged, the Kansas Court of Appeals focused on its prior holding in *Beneficial Finance Co. v. Schroeder,*[14] where the court stated that an interest in a vehicle may be perfected by noting its existence on the certificate of title or, in the case of a purchase-money lien, by mailing a notice of security interest.[15] Stating that holding otherwise would diminish the reliability of certificates of title, the *Mid American* court held that "[t]he lien must be noted on the certificate of title to be perfected."[16] This Court must agree.

While KAN. STAT. ANN. § 8-135(c)(5) provides that presentation of a NOSI shall perfect a purchase-money security interest in the vehicle on the date of such mailing or delivery,[17] nothing in KAN. STAT. ANN. § 8-135(c)(6) provides that the "presentation" of the application for the title alone constitutes perfection of the lien securing a vehicle refinance.[18] The plain language of the statute provides for the security interest to be indicated on the certificate as a condition of

---

[14] 12 Kan. App.2d 150, 737 P.2d 52, *rev. denied* 241 Kan. 838 (1987). This case also deals with a purchase-money security interest as opposed to a refinance.

[15] *Id.* at 151.

[16] 15 Kan. App.2d at 223.

[17] *See Beneficial Finance Co.,* 12 Kan. App. 2d at 151 ("Mailing or delivering notice of the security interest perfects the secured party's interest during the period from attachment to notation on the certificate of title.").

[18] *See Davis v. Credit Union of America (In re Lindahl)*, Adv. No. 05-5084, Memorandum Opinion at 10 (Bankr. D. Kan. Mar. 29, 2006) (Nugent, C.J.) (The rules pertaining to the filing of a NOSI apply to the sale and delivery of vehicles, not refinanced vehicles.).

7

perfection.[19]

Also persuasive here is the fact that, when revised Article 9 was adopted in Kansas in 2000, no corresponding change was made to KAN. STAT. ANN. § 8-135(c)(6), which remains essentially identical to its form and substance in 1991, the year of the *Mid American Credit Union* decision. Official Comment 5 to revised § 84-9-311 is telling, noting that "interplay of this section with certain certificate-of-title statutes may create confusion and uncertainty. . . . Accordingly, the Legislative Note to this section instructs the Legislature to amend the applicable certificate of title statutes to provide the perfection occurs upon receipt . . . of a properly tendered application for a certificate of title on which the security interest is to be indicated."[20] For whatever reason, the Kansas legislature has, so far, declined to follow this "instruction" of the drafters. It is not for this Court to legislate that change, however wise or advisable it may be.[21]

Two previously-decided bankruptcy court cases on secured titles in Kansas bear some mention in the context of this case. First, in *In re Luke*,[22] this Court rejected the "we did all we could" argument raised by Intrust here. Unfortunately, Intrust's papers contain an out-of-context quotation from that opinion, suggesting that this Court has previously held that "submission of the registration, the application, and the fee, had it been accomplished by June 20, 2003, would have

---

[19] KAN. STAT. ANN. § 84-9-311(a)(2).

[20] KAN. STAT. ANN. § 84-9-311, Off. Comment 5 (2005 Supp.).

[21] Some legislative attention to this section may be warranted to clarify, once and for all, the means and method of perfecting refinance security interests under KAN. STAT. ANN. § 8-135(c)(6).

[22] *Morris v. Wells Fargo Financial Acceptance Kansas, Inc. (In re Luke)*, 2004 Bankr. Lexis 1832 (Bankr. D. Kan. Nov. 18, 2004) (Nugent, C.J.).

8

sufficed to perfect Wells Fargo's lien . . . ."[23] This sentence must be read in context with the balance of the paragraph which states that when a creditor submits its registration receipt, application, and the fee, KDR notes the creditor's lien on the electronic title. Second, in *In re Hicks*,[24] United States Bankruptcy Judge Dale Somers discussed at length perfection of a security interest in a motor vehicle in Kansas, its history and purpose, and construction of the certificate of title statute in various cases, including *Mid American Credit Union*. Judge Somers was persuaded by the rationale in *Mid American Credit Union* and followed the construction of the statute by the Kansas Court of Appeals.[25]

This Court agrees and holds that, according to Kansas law, the perfection of a security interest in a titled vehicle that secures an obligation other than for purchase-money is only perfected upon notation of the lien on the certificate of title.

Because Intrust's liens were not noted on the certificate of title on July 23, 2004, the date of commencement of the case, Intrust's liens were not perfected at the time the debtor filed for bankruptcy and fall prey to the trustee's hypothetical lien creditor avoiding powers, subordinating

---

[23] *Id.* at *9.

[24] *Morris v. Boeing Wichita Credit Union (In re Hicks),* Adv. No. 04-5072 (Bankr. D. Kan. Sep. 14, 2005) (Somers, J.), *rev'd on other grounds, Morris v. Boeing Wichita Credit Union (In re Hicks),* 2006 WL 1764119 (D. Kan. June 27, 2006).

[25] On appeal, United States District Judge Monti L. Belot reversed the bankruptcy court's decision granting the trustee's complaint for lien avoidance, noting that there is no statute or case which states or holds that a lien created by a NOSI is "lost" or ceases to exist or becomes invalid if an inappropriate or invalid certificate of title is issued. In *Hicks*, perfection was obtained by the filing of a NOSI, involved a purchase money security interest, and is therefore factually and legally distinct from the case at bar. Judge Somers' well-reasoned narrative of the history of the titling statute's relationship to Article 9 remains persuasive.

9

Intrust's security interest to that of a lien creditor.[26] The trustee is a hypothetical lien creditor who, under § 544(a), stands in the shoes of a lien creditor and may avoid an unperfected security interest in the property of the debtor, retaining the security interest for the benefit of the estate under § 551.

JUDGMENT should therefore be entered for the trustee on his complaint and against Intrust avoiding Intrust's liens on the vehicles and preserving them for the benefit of the estate under § 551. A Judgment on Decision shall issue this day.

# # #

---

[26] KAN. STAT. ANN.§ 84-9-317(a)(2) (2003 Supp.).